IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Green 'N Grow Composting, LLC          :
and Stephen R. Lehman,                 :
        Appellants             :
                                :   No.  1002 C.D. 2018
        v.                     :
                                :   Submitted:  April 9, 2019
Martic Township                        :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                             FILED:  May 3, 2019


Green 'N Grow Composting, LLC, and Stephen R. Lehman (collectively Appellants) appeal from the June 19, 2018 order of the Lancaster County Court of Common Pleas (trial court), affirming the decision of the Martic Township Zoning Hearing Board (Board), which upheld an enforcement notice finding that Appellants violated the zoning ordinance in failing to obtain the necessary permits to erect new structures and to compost commercial residual waste in the agricultural district of Martic Township (Township).

Green 'N Grow Composting, LLC, through its sole owner, Stephen R. Lehman, owns property at 266 Douts Hill Road, Lancaster County, Pennsylvania (the Property), which is located in the Township's Agricultural District. On a part of Property that is approximately five acres in size, Appellants have three structures,

characterized by the Board as "Greenhouse Structures," that were used to compost materials. (Board's Findings of Fact (F.F.) Nos. 1-4, 19-21.)

From 2008, when the Board first issued Appellants a permit, to 2014, Appellants conducted a manure composting operation on the Property. (F.F. Nos. 29-30.) In March 2014, the Pennsylvania Department of Environmental Protection (Department) issued Appellants a "General Permit for Processing/Beneficial Use of Residual Waste . . . authorizing composting of packaged pre[-]consumer food prior to the removal of packaging." (F.F. No. 27.)[1]

On December 22, 2014, the Township's Zoning Officer, Dennis Shenk, issued Appellants an updated/corrected Zoning Certificate and Use and Compliance Permit (Use Permit). The Use Permit authorized the three Greenhouse Structures to be used "solely for agricultural use in accordance with the definition of 'normal agricultural operation' in [s]ection 2 of the Act of June 10, 1982 (P.L. 454, No. 133), commonly referred to as the Right to Farm Act, 3 P.S. [§]952, when conducted in accordance with Pennsylvania law, including [what is commonly referred to as] the Nutrient Management [Act (NMA)[2]] and [the Department's] regulations."

---

[1] With respect to this permit, in May 2014, the Department conducted an inspection and found that Appellants committed multiple violations of the Solid Waste Management Act (SWMA), Act of July 7, 1980, P.L. 380, *as amended*, 35 P.S. §§6018.101-6018.1003. Following numerous complaints from neighbors and a notice of violations, the Department and Appellants engaged in litigation that eventually resulted in a consent decree "that established additional conditions and time for Appellants to terminate composting operations and included a provision that all solid waste and compost is to be removed from [the Property] by December 31st, 2017." *Department of Environmental Protection v. Green 'N Grow Composting, LLC*, __ A.3d __, __ (Pa. Cmwlth., No. 367 C.D. 2018, filed December 31, 2018), slip op. at 3. After Appellants failed to comply, the Department filed a petition to enforce the consent decree and the trial court granted the petition, which this Court recently affirmed on further appeal. *See id.*, slip op. at 6-12.

[2] 3 Pa.C.S. §§501-522.

2

(Reproduced Record (R.R.) at 29-30;[3] F.F. No. 22.) Notably, in the Agricultural District, "agriculture" is listed as a permitted use, and the Zoning Ordinance of Martic Township (Ordinance) defines the term "agriculture" as being synonymous with the term "normal agricultural operation" in section 2 of the Right to Farm Act. (Trial court op. at 24.)

By Enforcement Notice dated December 8, 2016, the Zoning Officer cited Appellants for violating sections 402.B, 703.A, and 704.A of the Ordinance. (F.F. No. 5.) The Zoning Officer alleged that Appellants had used the Property and Greenhouse Structures in a manner beyond that which was permitted in the Use Permit by bringing "discarded packaged food and beverages, including plastic, cardboard, Styrofoam and aluminum packaging, dissolved air flotation (DAF) sludge from processing operations," and "other items classified as residual waste" by the Department, and processing these materials through, *inter alia*, a composting operation. (R.R. at 33.) The Zoning Officer determined that, under the Ordinance, such a use was not permitted in the Agricultural District; a zoning permit was required to change the use authorized in the Use Permit; and it was unlawful to utilize land for which a zoning permit is required and no certificate of use and occupancy had been issued. The Zoning Officer further determined that three "hoop structures" were installed on the Property to facilitate and effectuate the unlawful composting operation and that this constituted a violation of the Ordinance as well. (R.R. at 32-34.)[4]

---

[3] Appellants' reproduced record does not include the lower case "a" as required by Pa.R.A.P. 2173.

[4] In *Green 'N Grow Composting*, this Court affirmed the trial court's determination that materials located within the hoop structures, such as plastic bottles, metal cans, furniture, and food packaging material constituted "solid waste" as that term is defined under the SWMA.

Appellants appealed the Enforcement Notice to the Board, which conducted a hearing where, *inter alia*, the Zoning Officer, Lehman, and an expert witness for Appellants testified and various exhibits were entered into the record. Following the conclusion of the hearing on June 8, 2017, the Board issued a decision on September 14, 2017, denying Appellants' appeal. (Trial court op. at 2-3.)

In pertinent part, the Board found as follows. Appellants composted waxed cardboard, tough plastics, tin, aluminum, Styrofoam, and packaged foods, including meat products and hot dogs, on the Property inside the Greenhouse Structures. Appellants also composted materials and placed them in the windrows outside the Greenhouse Structures, i.e., the hoop structures, including cans, bottles, plastic buckets, sheets of plastics, and utensils. Described by Lehman as "slaughterhouse waste," poultry DAF is a residual waste from poultry processing operations and consists of "anything that comes from a poultry processing plant." (F.F. Nos. 49-50.) Appellants incorporated poultry DAF into the hoop structures for composting and also outside the Greenhouse structures. The poultry DAF rotted and produced odors, and neighboring property owners experienced significant adverse impacts caused by the foul odors and air pollution. (F.F. Nos. 33-37, 51-52, 77-78.)

The Board further found that crops were not grown on the Property or in the Greenhouse Structures; no livestock was raised or present on the Property; no timber was grown or harvested on the Property; nothing was produced on the Property that could be intended for human consumption; and none of the materials composted on the Property were grown on or originated from the Property. Regarding the compost manufactured on the Property, a slight portion of it was applied to a small area on the Property, approximately one-half of an acre, at a location where crops were not grown. The remainder of the compost manufactured

4

on the Property was either removed from the Property, stored on the Property, or sold to third parties. (F.F. Nos. 38-45; Trial court op. at 28.) Notably, Appellants' expert witness agreed that if there were a five-acre tract "where items are brought to be composted," like the composting operation at the Property, and the items were "composted and sold with nothing grown on the tract," then "such operation is not a normal agricultural operation." (F.F. No. 66.)

In addition, the Board found that Appellants "presented no credible evidence or testimony that the Township was aware, prior to 2016, that [they were not] composting principally manure." (F.F. No. 67.) In other words, although the Township was aware in 2014 that Appellants were using the Greenhouse Structures for the composting of manure, the Township and the Zoning Officer were unaware that Appellants were composting packaged food and other residual waste materials. (F.F. Nos. 29-30, 61, 67; Trial court op. at 10.)

Based on these facts and others, the Board determined that the evidence demonstrated that Appellants composted and processed residual waste on the Property and concluded that this conduct was not a "normal agricultural operation" under the Right to Farm Act and, therefore, was impermissible under the Use Permit and the Ordinance. For support, the Board cited *Tinicum Township v. Nowicki*, 99 A.3d 586 (Pa. Cmwlth. 2014), and *Clout, Inc. v. Clinton County Zoning Hearing Board*, 657 A.2d 111 (Pa. Cmwlth. 1995). In those cases, this Court generally concluded that when materials are transported to a property, and do not come from the property itself, and are then processed into a new or different material, including compost, the new or different material must be used to benefit the property itself, as opposed to being transported or used off-site, in order to qualify as a "normal

5

agricultural operation" for purposes of section 2 of the Right to Farm Act. (Board's Conclusions of Law (COL) Nos. 6-11.)

In its decision, the Board also recognized that the Department issued Appellants a permit in March 2014 and authorized the use of food processing residuals. However, the Board determined that the Department's permit did not supersede or otherwise alter the definition of "agriculture" in the Ordinance as a land use or its designation as being synonymous with the definition of "normal agricultural operation" in section 2 of the Right to Farm Act. (COL No. 13.) As such, the Board concluded that the "alteration of [Appellants' operation] from composting solely manure and agriculturally[-]generated waste to processing pre-consumer food waste, DAF, and residual waste was a change in the use of the [] Property requiring a zoning permit." (COL No. 25.) The Board similarly concluded that permits were necessary for Appellants to erect or install new structures in connection with the changed use. Because Appellants failed to obtain such permits, the Board concluded that they violated sections 402.B, 703.A, and 704.A of the Ordinance. (COL Nos. 21-24.)

As a final matter, the Board noted that Appellants did not request a variance and determined that they failed to meet the requirements for a variance by estoppel due primarily to the fact that they did not act in good faith. (COL Nos. 28-29.)

On appeal to the trial court, Appellants contended that the Board erred because Appellants (1) engaged in composting that constituted a "normal agricultural operation" that was protected and permitted as a matter of right by the Right to Farm Act and the act commonly referred to as the Agricultural Communities and Rural Environmental Act;[5] (2) obtained a vested right in previous permits issued by the

---

[5] 3 Pa.C.S. §§311-318.

6

Township; (3) established the criteria necessary for a variance by estoppel; and/or (4) conducted the composting operation in accordance with the NMA and the SWMA, which preempted the conflicting provisions and requirements of the Ordinance. (Trial court op. at 22-23.)

In a thorough and commendable fashion, the trial court rejected these contentions. First, the trial court concluded that Appellants' composting operation was not a "normal agricultural operation" under the Ordinance and the Right to Farm Act. The trial court determined that "the fact that compost [was] used in agriculture does not make the manufacture of compost a normal agricultural operation" and noted that, "[w]hile undisputedly fertilizer can be used and applied in an agricultural setting to enhance crop yields or growth, this does not transform what is otherwise clearly a manufacturing process into an agricultural one." (Trial court op. at 30-31.) The trial court also discounted Appellants' argument that the Department's permit authorized it to conduct its composting, reasoning that the method and manner used to compost failed to meet the operational requirements in Chapter 8 of the Department's Food Processing Residual Management Manual for food processing waste and residuals. (Trial court op. at 32-34.) Echoing the reasoning of the Board, and citing case law from other states as additional support for its conclusion, the trial court further concluded that the manufacturing of compost was not a "normal agricultural operation" because "the raw materials used to create the compost were not produced on the Property," "but [were] instead brought in from outside sources," and the "resultant compost [was] created entirely for use by outside entities, and not for farming operations (the production of livestock, crops or agricultural commodities on the Property)." (Trial court op. at 34.)

7

Next, the trial court dismissed Appellants' contention that they were entitled to a variance by estoppel or possessed a vested right to continue their composting operation. In doing so, the trial court determined that Appellants did not demonstrate the elements for a variance by estoppel because Appellants "did not act in good faith," "violated the [] Ordinance by failing to get the necessary zoning permits," even though they were aware that such permits were needed, and "failed to prove that [they] made substantial expenditures in reliance upon the belief that the use was permitted." (Trial court op. at 36-38.) The trial court further concluded that Appellants did not have a vested right as a result of the Use Permit, finding that Appellants failed to exercise due diligence in attempting to comply with the Ordinance. Additionally, the trial court found that "the Zoning Officer was under the mistaken belief that [Appellants were] still just composting chicken manure" and explained that "a permit issued under a mistake of fact or law confers no vested right or privilege on the person to whom the permit has been issued, and may be revoked at any time." (Trial court op. at 39-40.)

Finally, the trial court concluded that conflict preemption did not apply because the NMA and the SWMA were entirely consistent and compatible with the Ordinance. According to the trial court, the General Assembly's regulation of "nutrients" and "sewer sludge" in the NMA and the SWMA "did not preempt regulation of the manufacture of nutrients such as compost." (Trial court op. at 42.)

For these reasons, among others, the trial court denied Appellants' statutory appeal. Appellants then filed an appeal to this Court.[6]

---

[6] Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Hamilton Hills Group, LLC v. Hamilton Township Zoning Hearing Board*, 4 A.3d 788, 792 n.6 (Pa. Cmwlth. 2010).

8

## Discussion

In their brief to this Court, Appellants have abandoned most of the legal arguments and theories that they raised before the tribunals below and instead have advanced contentions that they did not present for consideration to the tribunals below. Neither the issues that Appellants previously raised, but have not briefed to this Court, nor the issues that they currently seek to raise for the first time in this Court, are cognizable on appellate review. Rather, they are waived. *See Kohl v. New Sewickley Township Zoning Hearing Board*, 108 A.3d 961, 963 n.3 (Pa. Cmwlth. 2015) ("Because Intervenors do not advance such arguments, they are waived, and we will not consider them *sua sponte* as a basis for reversal."); *Morrell v. Zoning Hearing Board of the Borough of Shrewsbury*, 17 A.3d 972, 976 n.6 (Pa. Cmwlth. 2011) ("Before the Board and the trial court, Objectors also asserted [an issue]. . . . However, Objectors have not raised this issue before our Court and, therefore, have waived it."); *Magyar v. Zoning Hearing Board of Lewis Township*, 885 A.2d 123, 128 (Pa. Cmwlth. 2005) ("By failing to raise this issue before the trial court, Objectors waived it.").

Moreover, in the argument section of their brief, aside from failing to include legal analysis, Appellants have not provided one single citation or reference to either the Ordinance, a statute, an administrative regulation, or a judicial opinion. *See Browne v. Commonwealth*, 843 A.2d 429, 435 (Pa. Cmwlth. 2004) ("At the appellate level, a party's failure to include analysis and relevant authority results in waiver."). They also have not specified a factual finding that the Board made that was in error or lacked support in the record. *See Munski v. Unemployment*

9

*Compensation Board of Review*, 29 A.3d 133, 137 (Pa. Cmwlth. 2011) ("Unchallenged findings are conclusive on appeal."); *see also American Rock Mechanics, Inc. v. Workers' Compensation Appeal Board (Bik and Lehigh Concrete Technologies)*, 881 A.2d 54, 56 (Pa. Cmwlth. 2005) (concluding that where a party cursorily contests findings of fact, but "does not specify which findings are unsupported by substantial evidence," a challenge to the findings "is waived"). Overall, Appellants' arguments are woefully inadequate and undeveloped for this Court to conduct meaningful review. Consequently, the issues that Appellants assert in their appellate brief are waived on this basis as well. *See Ruiz v. Unemployment Compensation Board of Review*, 911 A.2d 600, 605 n.5 (Pa. Cmwlth. 2006) ("When issues are not properly raised and developed in a brief, or when the brief is inadequate or defective because an issue is not adequately developed, this Court will not consider the merits of the issue.").

Notwithstanding waiver, Appellants contend that the Zoning Officer erred in issuing the Enforcement Notice for three reasons. First, the Zoning Officer testified that, following the receipt of a complaint, he visited the Property in June 2016; however, a Township Supervisor stated that the Township was not made aware of any complaints until September 2016. Second, the Zoning Officer testified that during the June 2016 visit, he observed food-packaged waste for the first time; however, when asked if he was aware that Appellants were "composting manure, crop residue, and pre-packaged consumer food" on April 8, 2014, the Zoning Officer testified, "Yeah. Probably did. [Lehman] was composting something. I know that." (R.R. at 67.) Third, the Zoning Officer essentially acquiesced to the composting operation because he completed a written form in connection with Appellants'

10

application to the Department for the General Permit, did not state any objection, and issued the Use Permit months later.

Although Appellants claim, based on the above assertions, that the Zoning Officer proffered "contradictory testimony," (Appellants' brief at 8), such an argument is meritless. "The Board, as fact finder, is the ultimate judge of credibility and resolves all conflicts of evidence." *In re Appeal of Brickstone Realty Corporation*, 789 A.2d 333, 339 (Pa. Cmwlth. 2001). Because questions of credibility and evidentiary weight are solely within the province of the Board as fact finder, this Court cannot reweigh the evidence and find that the Zoning Officer engaged in some sort of impropriety or was aware that Appellants were composting residual waste in 2014. *See Broussard v. Zoning Board of Adjustment of City of Pittsburgh*, 831 A.2d 764, 772 (Pa. Cmwlth. 2003) ("To hold otherwise, this Court would be required to reweigh the evidence presented at the hearing . . . . This we will not do."). Here, the Board found that there was no credible evidence or testimony that the Township was actually aware, prior to 2016, that Appellants were composting material other than manure. (F.F. No. 67.) This finding is amply supported by the testimony of the Enforcement Officer, who stated that he did not observe residual waste on the Property until June 2016. (R.R. at 47-51; Notes of Testimony (N.T.) at 55-56.)

With respect to the Zoning Officer's testimony about the application to the Department for the General Permit, this testimony, at best, merely confirmed that the Board did not provide Appellants with zoning approval to conduct the specific composting operation that Appellants requested to perform in their application to the Department. (R.R. at 57-63.) Appellants do not cite where in the record the application is located (assuming it was introduced into the record), and do not cite

11

any legal authority that would sustain the notion that the Township or Board forfeited the right to apply and enforce the Ordinance based on the Zoning Officer's comments/lack of comments on the application. "It is not this Court's function or duty to become an advocate for [Appellants]," and it is Appellants who have "the burden of establishing [their] entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law." *Commonwealth v. Hakala*, 900 A.2d 404, 407 (Pa. Super. 2006); *see also Grosskopf v. Workmen's Compensation Appeal Board (Kuhns Market)*, 657 A.2d 124, 125 (Pa. Cmwlth. 1995) ("[I]t is not our role to become the appellant's counsel. When a brief is inadequate to present specific issues for review, the court will not consider the merits of the case."). They have not done so.

Appellants also contend that "[n]owhere in the updated [Use Permit] was there any statement concerning any compliance issues or non-compliance" and assert that "the Township falsely alleged that the use of the [P]roperty had changed." (Appellants' brief at 11.) However, these single-sentence statements are isolated and cursory, and Appellants' "failure to adequately develop [their] arguments or support [their] bald assertions with sufficient citation to legal authority impedes meaningful judicial review of [their] claims." *Commonwealth v. Rompilla*, 983 A.2d 1207, 1210 (Pa. 2009). Again, it is not the role of this Court to develop an appellant's argument where the brief provides perfunctory legal discussion; to the contrary, these issues are simply not reviewable on appeal. *See Commonwealth v. Johnson*, 985 A.2d 915, 925 (Pa. 2009) (concluding that the appellant's "single-sentence 'arguments' for issues three and four" lacked development and adequate discussion and, thus, were "wholly inadequate to preserve an issue for appellate review"). Therefore, Appellants have

12

failed to provide this Court with any argument that could serve as a basis upon which to grant them relief.

In essence, Appellants' arguments contradict—or at the very least, assume away—the Board's factual findings and legal conclusions and do nothing more than urge this Court to adopt their position. However, Appellants' arguments in support of their position are markedly deficient and do not establish that the Board, or the trial court, committed an error of law or an abuse of discretion.

Accordingly, we affirm.

_____
PATRICIA A. McCULLOUGH, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Green 'N Grow Composting, LLC   :
and Stephen R. Lehman,   :
             Appellants   :
  :  No.  1002 C.D. 2018
       v.   :
  :
Martic Township   :

## ***ORDER***

AND NOW, this 3rd day of May, 2019, the June 19, 2018 order of the Lancaster County Court of Common Pleas is hereby affirmed.


_____
PATRICIA A. McCULLOUGH, Judge